**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

NATALIE ZAGURY, individually and on behalf of all others similarly situated,

*Plaintiff*,

vs.

PURAGAIN WATER LLC,

*Defendant*.
_______________________________________/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**Case No. 1:26-cv-20454**

# FIRST AMENDED CLASS ACTION COMPLAINT

1. Plaintiff, Natalie Zagury ("Plaintiff"), brings this action against Defendant, Puragain Water LLC ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

## NATURE OF THE ACTION

2. This is a class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA").

3. Defendant is a water treatment company engaged in providing water purification products and services to consumers across the United Sates, including the State of Florida.

4. To promote its goods and services, Defendant engages in aggressive telephonic sales call campaigns to consumers with no regards for consumers' rights under the TCPA, even after customers opt out from Defendant's messages and calls.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the classes, and any other available legal or equitable remedies.

**JURISDICTION AND VENUE**

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of $75,000. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). The Court has supplemental jurisdiction over Plaintiff's FTSA claim under 28 U.S.C. § 1367 because it arises from the same telemarketing communications and opt-out requests alleged herein. Therefore, federal question jurisdiction, diversity jurisdiction, supplemental jurisdiction, and CAFA jurisdiction are present.

7. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in this District, Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the Southern District of Florida and, on information and belief, Defendant has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of

Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the Southern District of Florida.

## PARTIES

8. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Miami Dade County, Florida.

9. Plaintiff is, and at all times relevant hereto was, an individual and the sole subscriber of the residential telephone number ending in 5982 (the "5982 Number") that received Defendant's text message solicitations.

10. Defendant is a California company whose principal place of business is at 1330 Loma de Paz, Escondido CA 92027.

11. Defendant directs, markets, and provides its business activities throughout United States and the State of Florida.

12. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

13. Beginning at least in November 2025, Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff's 5982 Number, from Defendant's telephone number (760) 465-4530.

14. Defendant sent telemarketing text messages to Plaintiff's 5982 Number on November 28, 2025, November 29, 2025, and December 1, 2025 (as shown below):




15. On December 1, 2025, Plaintiff responded with the messages "Stop" and "Remove" to Defendant's (760) 465-4530 telephone number, using clear and unambiguous opt-out language to opt out of any further communications with Defendant (as shown below):




16. Immediately after Plaintiff opt-out request, Defendant sent an additional text message to Plaintiff's 5982 Number stating: "You have successfully opted out. Reply START to resubscribe."

17. Despite Plaintiff's unequivocal opt-out request, Defendant engaged in an extraordinary aggressive and persistent pattern of calls bombardment, sending unwanted calls to Plaintiff's 5982 Number, including but not limited to those sent on December 1, 2025 , from Defendant's (760) 585-

1302 and (210) 318-4284 numbers, demonstrating a willful and knowing disregard for Plaintiff's clearly expressed wishes (as shown below):




18. Plaintiff ignored the calls due to their unsolicited nature, nevertheless, Defendant continued calling on December 2, 2025, from Defendant's number (656) 220-2523, as shown below:




19. Defendant persisted in calling Plaintiff's Number, demonstrating a disregard for complying with the law and Plaintiff's privacy. On December 3, 2025, Defendant again called Plaintiff from (945) 288-4347 number, as show below:




20. On December 4, 2024, Defendant continued calling Plaintiff's Number despite the opt-out message and prior unanswered calls, the calls were made from different numbers owned by Defendant, (760) 359-6734, as show below:


2:09
"Pura" in Calls
+1 (656) 265-0377
PURAGAIN WATER
12/11/25
PW
Puragain Water
phone
12/10/25
+1 (656) 265-1357
PURAGAIN WATER
12/9/25
+1 (760) 359-6727
Puragain Water
12/9/25
PW
Puragain Water
phone
12/8/25
PW
Puragain Water
12/5/25
+1 (760) 359-6734
Puragain Water
12/4/25
+1 (945) 288-4347
PURAGAIN WATER
+1 (656) 220-2523
PURAGAIN WATER
12/2/25
+1 (760) 585-1302
Puragain Water
12/1/25
+1 (210) 318-4284 (2)
Puragain Water
12/1/25
Favorites
Recents
Contacts
Keypad
10
Voicemail

21. On December 5, 2025, Defendant sent to Plaintiff another telemarketing text message, using a different number (760) 481-6108), ignoring the opt-out request and further violating the TCPA, as shown below:



22. On December 9, 2025, Defendant used two different telephone numbers, (656) 265-1357 and (760) 359-6727, to call Plaintiff, disregarding her express request not to be contacted again, as shown below:



23. Despite Plaintiff having ignored Defendant's calls and messages and having attempted to opt-out, on December 11, 2025, called Plaintiff from a different number (656) 265-0377, as shown at the image below:



24. On December 12, 2025, Defendant called Plaintiff from two different telephone numbers, (945) 288-2491 and (656) 228-8593, as shown below:



25. As if that were not enough, Defendant's barrage of calls continued, with Defendant calling Plaintiff from telephone number (619) 393-2497 on December 15, 2025, and December 17, 2025, as shown below:



26. Defendant continues placing unsolicited calls to Plaintiff, on December 18, 2025, from (945) 288-4185 and (656) 265-0379 numbers, as shown below:



27. On December 26, 2025, Defendant continues the campaign of calls to Plaintiff, demonstrating a persistent pattern of unsolicited telemarketing activity, calling from another number (656) 265-0379, as shown below:




.

28. This prolonged pattern of violations demonstrates Defendant's complete failure to maintain any functional internal do-not-call procedures and its deliberate choice to ignore consumer opt-out requests over an extended period of more than two months, utilizing multiple telephone numbers in a systematic effort to evade opt-out requests, (as shown above).

29. Defendant has the capability of immediately complying with Plaintiff's opt-out requests.

30. Defendant sent Plaintiff telephone calls more than 15 (fifteen) days after Plaintiff's first "stop" request.

31. At no point in time did Plaintiff provide Defendant with her express written consent to be contacted.

32. As demonstrated by the above screenshots, Defendant does not honor reasonable consumer requests to opt-out of text message or call solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's telephone solicitations by telling Defendant "Stop", but Defendant continued to text message and call Plaintiff intentionally disregarding Plaintiff's instructions in order to solicit the sale of its services to Plaintiff.

33. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages or calls from Defendant.

34. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list. In fact, Plaintiff, through counsel, made a request to Defendant for a copy of Defendant's do-not-call list policy, but received no response from Defendant.

35. Defendant failed to place Plaintiff on an internal do-not-call list after Plaintiff's explicit opt-out instructions.

36. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list.

37. Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not maintain an internal do-not-call list.

38. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages and calls it sent to Plaintiff as reflected by the fact that Plaintiff made an explicit opt-out request and that request was never processed; it was ignored by Defendant and its employees and Defendant continued to send text messages and calls for more than two months after the opt-out request while utilizing multiple telephone numbers to continue the harassment and circumvent Plaintiff's opt out.

39. These facts strongly suggest that Defendant fails to ensure that requests by Plaintiff and the Class members to opt-out of future communications are honored within a reasonable time.

40. Indeed, Plaintiff's and the class members opt-out requests were not honored within a reasonable time from when the opt-out request was made.

41. Defendant's text messages and calls were transmitted to Plaintiff's residential cellular telephone, and within the time frame relevant to this action.

42. Defendant's text messages and calls constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., purification water products and services.

43. Further, as demonstrated by the above screenshots, the purpose of Defendant's text messages and calls were to solicit the sale of consumer goods and/or services – in this case personal water delivery service.

44. The information contained in the text messages advertises Defendant's various discounts and promotions, which Defendant sends to promote its business.

45. Upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(1).

46. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarketing in the existence and the use of any internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(2).

47. Defendant sent the subject texts and made the calls within this judicial district and, therefore, Defendant's violations of the TCPA and FTSA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

48. Defendant's texts and calls were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

49. At no point in time did Plaintiff provide Defendant with her express written consent to be contacted, before and after opting out.

50. Specifically, Plaintiff never completed any type of form that clearly and conspicuously authorized Defendant to contact Plaintiff's residential cellular telephone with marketing text messages and calls.

51. Plaintiff has no existing business relationship with Defendant

52. To the extent that Defendant ever had any consent to contact Plaintiff for marketing purposes, that consent was expressly revoked on at least December 1, 2025, when Plaintiff responded to Defendant with "Stop".

53. Plaintiff is the subscriber and sole user of the 5982 Number and is financially responsible for phone service to the 5982 Number.

54. Plaintiff's 5982 Number is her residential number which she uses for personal purposes.

55. Plaintiff registered her 5982 Number with the national do-not-call registry on February 7, 2006, and has been registered at all times relevant to this action.

56. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

57. The text messages and calls originated from at least telephone 17 numbers, which upon information and belief are owned and operated by Defendant or on behalf of Defendant.

58. Upon information and belief, Defendant has access to outbound transmission reports for all text messages and calls sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members. Defendant also has access to text message logs showing Plaintiff's and the Class members inbound opt-out requests.

59. To send the text messages and calls, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages and calls automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and

the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform.

60. The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

61. The Platform has the capacity to schedule the time and date for future transmission of text messages and calls, which was in fact utilized by Defendant.

62. The Platform also has an auto-reply function that results in the automatic transmission of text messages or calls.

63. Defendant was not required to and did not need to utilize the Platform to send messages and calls to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message and call advertisements at a nominal cost to Defendant.

64. Defendant would be able to conduct its business operations without sending automated text messages and calls to consumers.

65. Defendant would be able to send automated text messages and calls to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages or calls.

66. Defendant would be able to send text messages and calls to consumers without consent by utilizing a non-automated text messaging system.

67. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages and calls.

68. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

69. Compliance with the FTSA will not result in Defendant having to cease its business operations.

70. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

71. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

72. Plaintiff and the Class members revoked any consent they may have provided Defendant to text message or call them by responding with "stop" opt-out instructions.

73. Defendant's unwanted telemarketing text messages and calls caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages and calls also inconvenienced Plaintiff and caused disruption to her daily life.

74. Defendant's unwanted telemarketing text messages and calls caused Plaintiff actual harm. Specifically, Plaintiff estimates that she has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages and calls. Each time, Plaintiff had to stop what she was doing to either retrieve her phone and/or look down at the phone to review the messages and calls.

75. Next, Plaintiff wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendant's unwanted text messages and calls. In all, Defendant's violations of the TCPA and FTSA caused Plaintiff to waste at least fifteen minutes of her time in addressing and attempting to stop Defendant's solicitations. Additionally, the deliberate nature of Defendant's violations, continuing to send messages and calls after her express opt-out request, caused Plaintiff significant additional time loss and frustration over a period of more than thirteen months.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

76. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

77. Plaintiff brings this case on behalf of the following "Classes" defined as follows:

> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of promoting Defendant's products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**
>
> **National Internal Do Not Call Class: From four years before the filing of the Complaint, all persons in the United States who (1) were sent more than one text message by or on behalf of Defendant within any 12-month period; (2) regarding Defendant's goods or services, to said person's cellular telephone number; and (3) while Defendant did not maintain the required procedures under 47 C.F.R. § 64.1200(d) for maintaining a list of persons who request not to receive such calls.**
>
> **FTSA Stop Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages or calls, from Defendant, regarding Defendant's goods or services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages or calls by replying to the messages or calls with a "stop" or similar opt-out instruction.**

78. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in each Class but believes the Class members number in the several thousands, if not more.

79. Also excluded from the Classes are persons who, after making a request to Defendant to not receive future text messages or calls, subsequently affirmatively opted-in to receive text messages or calls from Defendant.

**NUMEROSITY**

80. Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to thousands of consumers listed throughout the United States without their prior express written consent and/or after they had requested to opt-out. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

81. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's text message and call records.

**COMMON QUESTIONS OF LAW AND FACT**

82. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

[1] Whether Defendant initiated telephone solicitations to Plaintiff and the Class members;

[2] Whether Defendant violated 47 C.F.R. § 64.1200(c)

[3] Whether Defendant violated 47 C.F.R. § 64.1200(d);

[4] Whether Defendant violated Fla. Stat. § 501.059;

[5] Whether Defendant adhered to requests by class members to stop sending text messages to their telephone numbers;

[6] Whether Defendant keeps records of text recipients who revoked consent to receive texts;

[7] Whether Defendant has any written policies for maintaining an internal do not call list;

[8] Whether Defendant's conduct was knowing and willful; and

[9] Whether Defendant is liable for damages, and the amount of such damages.

83. The common questions in this case are capable of having common answers. If Plaintiff proves that Defendant routinely transmits telephone solicitations and telemarketing messages to consumers after they requested to be opted out, while they were registered on the DNC Registry and at times prohibited by law, Plaintiff and the Class members will have identical TCPA and FTSA claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

84. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

85. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

**SUPERIORITY**

86. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes

resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

87. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

**COUNT I**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

88. Plaintiff repeats and realleges the paragraphs 1 through 87 of this Complaint and incorporates them by reference herein.

89. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

90. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[1]

91. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

92. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

93. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

94. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone solicitation in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

95. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**COUNT II**
**VIOLATION OF 47 U.S.C. § 227(c)(2)**
**(Individually and on behalf of the National Internal Do Not Call Class)**

96. Plaintiff re-alleges and incorporates paragraphs 1 through 87 as if fully set forth herein.

97. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

98. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) or any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(3), (6).

99. Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

47 C.F.R. § 64.1200(e).

100. Plaintiff and the Internal Do Not Call Class members made requests to Defendant not to receive telemarketing messages from Defendant.

101. Defendant failed to honor Plaintiff and the Internal Do Not Call Class members' requests.

102. Defendant continued to send telemarketing calls and messages to Plaintiff more than ten (10) business days after Plaintiff's opt-out request.

103. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing messages made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

104. Because Plaintiff and the Internal Do Not Call Class members received more than one text message and/or call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

105. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

106. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

107. Plaintiff and the Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

108. Plaintiff and the National Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT III**
**VIOLATION OF FLA. STAT. § 501.059(5)**
**(On Behalf of Plaintiff and the FTSA Stop Class)**

109. Plaintiff re-alleges and incorporates paragraphs 1 through 87 as if fully set forth herein.

110. In pertinent part, the FTSA provides that a telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer who has previously communicated that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission made by or on behalf of the seller whose goods or services are being offered. Fla. Stat. § 501.059(5).

111. The FTSA defines a "telephone solicitor" as a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including but not limited to calls made by use of automated dialing or recorded message devices. Fla. Stat. § 501.059(1)(i).

112. Defendant is a telephone solicitor under the FTSA because it made or caused to be made telephonic sales calls, including text messages and telephone calls, to promote its water purification products and services in Florida.

113. Plaintiff and the FTSA Stop Class members are consumers who received one or more outbound telephone calls or text messages regarding Defendant's goods or services more than fifteen (15) days after they communicated to Defendant that they did not wish to receive such communications made by or on behalf of Defendant via the word "Stop".

114. Plaintiff communicated to Defendant on December 1, 2025 that she did not wish to receive further communications by responding "Stop" to Defendant's telemarketing messages.

115. Defendant failed to honor Plaintiff's and the FTSA Stop Class members' opt-out requests and continued to initiate outbound telephone calls or text messages made by or on behalf of Defendant regarding Defendant's goods or services.

116. As a result of Defendant's conduct, Plaintiff and the FTSA Stop Class members were harmed and are entitled to statutory damages of at least $500.00 for each violation, injunctive relief against future violations, and, to the extent Defendant's violations are determined to be knowing or willful, treble damages as provided by Fla. Stat. § 501.059(10).

**COUNT IV**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA**
**(On Behalf of Plaintiff and the TCPA Classes)**

117. Plaintiff re-alleges and incorporates paragraphs 1 through 87 as if fully set forth herein.

118. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

119. Defendant knew that it did not have prior express consent to transmit telemarketing text messages and calls and knew or should have known that its conduct was a violation of the TCPA.

120. Defendant knew or should have known that Plaintiff's number was on the National Do Not Call Registry since February 7, 2006, and that sending text messages and calls to such numbers violated federal regulations.

121. Defendant knew or should have known that continuing to send telemarketing text messages and calls after receiving Plaintiff's explicit demand to “Stop” violated 47 C.F.R. § 64.1200(d) and related TCPA provisions requiring entities to maintain internal do-not-call procedures.

122. Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its telemarketing text messages or calls and that their numbers were on the National Do Not Call Registry, and that Plaintiff’s explicit opt-out demand was being ignored for more than two months, while utilizing multiple telephone numbers to evade the opt-out request, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Classes pursuant to § 227(c)(5) of the TCPA.

123. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff’s counsel as Classes Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA and FTSA;

c) An order declaring that Defendant’s actions, set out above, violate the TCPA and FTSA;

d) An injunction requiring Defendant to cease all telephonic sales calls and text messages prohibited by the TCPA and FTSA, and to otherwise protect the interests of the Classes;

e) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Classes, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the text messages as alleged herein.

Dated: May 22, 2026

Respectfully Submitted,

**Shamis & Gentile, P.A.**
*/s/ Christopher Berman*
Christopher E. Berman, Esq.
Florida Bar # 1010654
cberman@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW P.A.**
*/s/ Scott Edelsberg*_
Scott Edelsberg, Esq.
Florida Bar No. 0100537
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Telephone: 305-975-3320
Email: scott@edelsberglaw.com

*Counsel for Plaintiff and the Classes*