**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-20454-BLOOM/Elfenbein**

NATALIE ZAGURY, individually and on behalf of
all others similarly situated,

      Plaintiff,

v.

PURAGAIN WATER, LLC,

      Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Puragain Water, LLC's ("Defendant")

Motion to Dismiss Plaintiff's Amended Complaint, ECF No. [21] ("Motion"). Plaintiff filed a

Response in Opposition, ECF No. [25], to which Defendant filed a Reply, ECF No. [26]. For the

reasons that follow, the Motion is granted in part and denied in part.

### I.    BACKGROUND

This case arises from a series of purportedly unsolicited text messages and calls Defendant

sent to Plaintiff and others similarly situated. As alleged in the Amended Complaint, Defendant is

a water treatment company engaged in providing water purification products and services to

consumers across the United States, including Florida. ECF No. [11] ¶ 3. Beginning in November

2025, Defendant sent multiple telemarketing messages to Plaintiff's phone number,[1] including on

November 28, 2025, November 29, 2025, and December 1, 2025. *Id.* ¶¶ 13, 14. On December 1,

2025, Plaintiff responded with the messages, "Stop" and "Remove." *Id.* ¶ 15. Immediately after

---

[1] Plaintiff alleges that this is her residential number, used for personal purposes. *Id.* ¶ 54. Plaintiff registered her number with the national "do not call" registry on February 7, 2006 and has been registered at all relevant times. *Id.* ¶ 55.

Plaintiff's opt-out request, Defendant sent an additional text message to Plaintiff stating, "You have successfully opted out. Reply START to resubscribe." *Id.* ¶ 16.

Notwithstanding this, Defendant "engaged in an extraordinary aggressive and persistent pattern of calls bombardment, sending unwanted calls to" Plaintiff. *Id.* ¶ 17. Though Plaintiff ignored the calls, Defendant called twice on December 1, 2025; once on December 2, 2025; once on December 3, 2025; once on December 4, 2025; once on December 5, 2025; once on December 8, 2025; twice on December 9, 2025; once on December 10, 2025; once on December 11, 2025; twice on December 12, 2025; once on December 15, 2025; once on December 17, 2025; twice on December 18, 2025; once on December 26, 2025; once on December 30, 2025; once on January 2, 2026; once on January 9, 2026. *Id.* ¶¶ 17–27. Defendant also texted Plaintiff again on December 5, 2025. *Id.* ¶ 21.[2]

Plaintiff alleges that Defendant has the capability of immediately complying with Plaintiff's opt-out request. *Id.* ¶ 29. Notwithstanding this, Defendant called Plaintiff more than 15 days after Plaintiff's first "stop" request. *Id.* ¶ 30. At no point did Plaintiff provide her express written consent to be contacted. *Id.* ¶ 31. Plaintiff alleges that this shows that Defendant has not instituted procedures for maintaining an internal "do not call" list, created a written policy for maintaining such a list, or trained its personnel on the use and existence of a "do not call" list. *Id.* ¶¶ 33, 34, 36.

Defendant's unwanted text messages and calls caused Plaintiff harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion; they also inconvenienced Plaintiff and caused disruption to her daily life. *Id.* ¶ 74.

---

[2] Plaintiff alleges that these text messages and calls encouraged future purchase or investment in property, goods, or services—that is, water purification products and services. *Id.*¶ 42. The specific text messages and calls at issue were intended to solicit the sale of a personal water delivery service and advertise various discounts and promotions. *Id.* ¶¶ 43, 44.

In January 2026, Plaintiff filed this lawsuit, and thereafter filed her Amended Complaint, asserting (1) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.§ 227, on behalf of Plaintiff and those on the national "do not call" registry (Count I), (2) violation of the TCPA, 47 U.S.C.§ 227(c)(2),[3] on behalf of Plaintiff and those who should have been on Defendant's internal "do not call" registry (Count II), (3) violation of the Florida Telephone Solicitation Act, Florida Statute § 501.095(5) ("FTSA"), on behalf of Plaintiff and those who received text messages or calls from Defendant more than 15 days after opting out (Count III), (4) knowing and/or willful violations of the TCPA on behalf of Plaintiff and those on the national "do not call" registry or who should have been on Defendant's internal "do not call" registry. ECF No. [11].

In June 2026, Defendant filed the instant Motion, arguing the Amended Complaint should be dismissed as a shotgun pleading and, independently, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. [21]. Plaintiff responds that her Amended Complaint is not a shotgun pleading, plausibly alleges violations of the TCPA and FTSA, and does not contain internal contradictions that render the claims implausible. ECF No. [25]. Defendant replies that "[t]he Amended Complaint [] does not plausibly plead a TCPA or FTSA violation, and its indiscriminate mixing of texts, calls, statutes, classes, and damages theories confirms it is a shotgun pleading." ECF No. [26] at 1.

## II.    LEGAL STANDARD

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL

---

[3] In the title of Count II, Plaintiff refers to 47 U.S.C.§ 227(c)(2). However, all other portions of Count II refer to 47 U.S.C.§ 227(c)(5), so the Court construes Count II as referring to 47 U.S.C.§ 227(c)(5).

3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). In considering a motion to dismiss, the court is limited to the facts contained in the complaint and attached exhibits. *See Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

## III.   DISCUSSION

### A.  Shotgun Pleading

Defendant's first argument is that the Amended Complaint constitutes an impermissible shotgun pleading. ECF No. [21] at 5. First, the Amended Complaint "indiscriminately incorporates and repeats 87 numbered paragraphs of factual allegations into all four Counts, without any effort

to connect or separate which of those 87 factual allegations relate to each Count." *Id.* at 6. Second, the Amended Complaint is "rife with 'conclusory, vague, and immaterial' allegations, making it difficult for [Defendant] to understand the grounds upon which each claim rests." *Id.* at 7. Specifically, the Amended Complaint commingles calls and text messages, when those terms are not interchangeable for TCPA or FTSA purposes, and revocation of consent to texts does not plausibly revoke consent for calls. *Id.* at 7–10. Finally, Plaintiff "relies on conclusory allegations doing little more than quoting the statutory language to explain how the facts indicate [Defendant] allegedly violated the TCPA." *Id.* at 10.

Plaintiff responds that re-incorporation of factual allegations is standard pleading practice. ECF No. [25] at 3–4. Moreover, the Amended Complaint contains detailed, non-conclusory factual allegations. Finally, the TCPA and FTSA claims are properly separated, as the Amended Complaint "clearly delineates the statutory basis for each count and specifies the class and relief applicable to each." *Id.* at 5.

Defendant replies that "the Amended Complaint has led to a situation where the counts contain irrelevant factual allegations and legal conclusions." ECF No. [26] at 2–3.

Derived from Federal Rule of Civil Procedure 8(a)(2), a shotgun pleading is defined as "[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading[.]" *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1128–29 (11th Cir. 2001)). Shotgun pleadings are condemned by the Eleventh Circuit, which has specifically instructed district courts to dismiss shotgun pleadings as "fatally defective." *B.L.E. v. Georgia*, 335 F. App'x 962, 963 (11th Cir. 2009) (citations omitted).

The Eleventh Circuit has identified four types of shotgun pleadings, the "unifying characteristic" of which being that all shotgun pleadings "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). The first and "most common type" of shotgun pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. The second type of shotgun pleading is the complaint that is "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Third is the pleading "that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1323. Fourth is the pleading that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

The Court disagrees with Defendant that the Amended Complaint falls into the second and third categories. As to Defendant's first argument—that Plaintiff's incorporation of its entire factual background section renders the Amended Complaint a shotgun pleading—such a contention is plainly belied by well-established law in this circuit. "Incorporating all factual allegations does not make a complaint a shotgun pleading." *Prestige Ins. Grp. v. Allstate Ins. Co.*, No. 21-60515-CIV, 2022 WL 1091825, at *2 (S.D. Fla. Apr. 12, 2022) (citing *Weiland*, 792 F.3d at 1321–23); *see also Restless Media GmbH v. Johnson*, 704 F. Supp. 3d 1288, 1296 (S.D. Fla. 2023) ("Plaintiff's incorporation of factual allegations does not render the Amended Complaint a shotgun pleading." (citation omitted)); *Sec. & Exch. Comm'n v. Taronis Techs., Inc.*, No. 22-CV1939-TPB-AAS, 2023 WL 5625299, at *4 (M.D. Fla. Aug. 31, 2023) (same); *Resouluna 4840,*

*LLC v. Palceski*, No. 619CV267ORL41DCI, 2019 WL 7482209, at *2 (M.D. Fla. Sept. 5, 2019) (same). Indeed, the Eleventh Circuit has explained that a complaint that incorporates all factual allegations, while it may "look[ ], at first glance, like the most common type of shotgun pleading," is not a shotgun pleading, since "[t]he allegations of each count are not rolled into every successive count on down the line." *Weiland*, 792, F.3d at 1324. The emphasis is on whether "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" such that the defendant cannot be "expected to frame a responsive pleading." *Anderson v. Dist. Bd. of Tr. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). But nothing in the Amended Complaint prevents the Court from determining the sufficiency of each claim or prevents Defendant from framing a response.

The Court turns next to Defendant's second argument—that the Amended Complaint improperly commingles calls and text messages, and revocation of consent to texts does not plausibly revoke consent for calls. Again, the Court cannot agree for several reasons. First, the Federal Communications Commission ("FCC") has been abundantly clear:

> 32. Lastly, we take this opportunity to confirm that, when consent is revoked in any reasonable manner, that revocation extends to both robocalls and robotexts regardless of the medium used to communicate the revocation of consent. For example, if the consumer revokes consent using a reply text message, then consent is deemed revoked not only to further robotexts but also robocalls from that caller.

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 39 F.C.C. Rcd. 1988 (2024).[4]

---

[4] Though the FCC has delayed the effective date of 47 C.F.R. § 64.1200(a)(10), which requires that "[i]f a called party uses any [reasonable] method to revoke consent, that consent is considered definitively revoked and the caller may not send additional robocalls and robotexts," there is no indication that the clarification cited above only applies once § 64.1200(a)(10) is effective. Moreover, the use of the term "confirm" implies that this is not a substantively new position, but an affirmation of what was already encompassed by previous regulation.

But given that it is not entirely clear whether this clarification is effective, the Court looks to other sources. The FCC has indicated that when a caller receives an opt-out text, the caller may send a "one-time confirmation text, provided the sender ceases all further robocalls and robotexts absent an affirmative response from the consumer." *Id.* ¶ 25. That one-time text can clarify the scope of the recipient's revocation of consent, but the key is that "the sender ceases all further robocalls and robotexts absent an affirmative response from the consumer that they do, in fact, wish to receive further communications from the sender. The lack of any response to the confirmation text must be treated by the sender as a revocation of consent for all robocalls and robotexts from the sender." *Id*. The effectiveness of that portion of the FCC's rules—instantiated at 47 C.F.R. § 64.1200(a)(12)—was not delayed. Here, Plaintiff alleges that after opting out, Defendant sent two follow-up text that did not seek any form of clarification on the scope of consent revocation, nor did Plaintiff respond affirmatively. ECF No. [11] ¶ 15. Thus, existing rules appear to have required Defendant to cease all further robotexts *and* robocalls.

Finally, it has been the longstanding position of the FCC that "a called party may revoke consent at any time and through any reasonable means." *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 ¶ 47 (2015). The reasonableness analysis hinges on "the totality of the facts and circumstances surrounding that specific situation, including, for example, whether the consumer had a reasonable expectation that he or she could effectively communicate his or her request for revocation to the caller in that circumstance[.]" *Id.* at n.233. Whether the response, "Stop," to a text message reasonably communicates a desire to stop receiving *all* future communications is a question of fact not suitable for resolution at this stage of the proceedings.

For those stated reasons, the Court does not find that the "commingling" of calls and texts renders the Amended Complaint a shotgun pleading. It merely reflects the legal contention that revocation of consent to texts also resulted in revocation of consent to calls.

The Court turns to Defendant's final shotgun pleading-related contention—namely, that Plaintiff "relies on conclusory allegations doing little more than quoting the statutory language to explain how the facts indicate [Defendant] allegedly violated the TCPA." *Id.* at 10. If Plaintiff *solely* relied on conclusory allegations, the Court would agree with Defendant. But Plaintiff provided specific and detailed factual allegations that are sufficient to support her claims—such as dates and contents of messages. "An allegation is not conclusory if other factual allegations support the statement." *In re Menser*, No. 18-65681-JWC, 2021 WL 4484894, at *4 (Bankr. N.D. Ga. Sept. 30, 2021). Here, the allegations that Defendant frames as conclusory—including that Defendant has not instituted procedures for maintaining a "do not call" list, does not have a written policy for maintaining a "do not call" list and does not provide training—are inferences that are well-supported by the factual allegations outside of them. Thus, the Court declines to find the Amended Complaint a shotgun pleading on this ground.

### B.  Plausibility of TCPA and FTSA Claims

Defendant next argues that the Amended Complaint's allegations defeat any plausible TCPA or FTSA claim. ECF No. [21] at 11. First, Plaintiff's allegations—specifically the screenshot text message indicating that Plaintiff filled out an online inquiry form—undermine any claim that the initial contact lacked consent. *Id.* at 12–13. Second, the text messages demonstrate that Plaintiff did not receive a text message outside of the 10-day TCPA grace period or the 15-day FTSA grace period. *Id.* at 14. And any calls received were not plausibly unlawful, as Plaintiff did not revoke consent to calls, only text messages. *Id.* at 16.

9

Plaintiff responds that her initial inquiry—"without a signed written agreement containing the required disclosures"—does not constitute "express written consent" to ongoing marketing. ECF No. [25] at 6, 7. Moreover, even assuming Plaintiff's inquiry constituted consent, the Amended Complaint makes clear that consent was revoked on December 1, 2025. *Id.* at 7. Furthermore, "prior express invitation or permission" and "established business relationship" are affirmative defenses not suitable for resolution on a motion to dismiss. *Id.* at 7, 8. In addition, the December 5, 2025 text message does not defeat Plaintiff's claims, as the later calls are independent violations of the TCPA and FTSA, since Plaintiff's opt-out applied to all forms of communication. *Id.* at 8–13. Finally, that Plaintiff did not answer the calls does not undermine her TCPA claim, as she was on the national "do not call" registry and therefore should not have been called in the first place. *Id.* at 13–14.

Defendant replies that Plaintiff has conceded that the December 5, 2025 text message occurred during the grace periods; thus, Counts I through IV should be dismissed to the extent they rely upon alleged text message violations. ECF No. [26] at 3–4. Moreover, Defendant reiterates its argument that "Plaintiff has failed to plausibly allege factual allegations demonstrating Plaintiff plausibly opted out from receiving telephone calls from Defendant after her inquiry." *Id.* at 4.

The TCPA and its implementing regulations generally prohibit telephone solicitations. 47 U.S.C. S 227; 47 C.F.R. § 64.1200(c). The TCPA defines a "telephone solicitation" as follows:

> the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.

47 U.S.C. § 227(a)(4). The FCC, in promulgating regulations to implement the TCPA, explains that "prior express invitation or permission . . . must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." 47 C.F.R. § 64.1200(c)(2)(ii). The term "established business relationship"

> means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(5).

Here, the Court is not satisfied, without additional information, that a prior express invitation or an established business relationship existed. The initial text sent by Defendant certainly could support such an inference, but another plausible inference is that this text was sent without satisfactory permission or an inquiry, and at this stage, the Court is to resolve factual inferences in Plaintiff's favor. Moreover, Plaintiff has plausibly alleged that she revoked consent. *See* ECF No. 11 ¶ [15]. So to the extent consent ever existed, there exist plausible allegations in the Amended Complaint that its revocation was "conveyed in a reasonable manner." 47 C.F.R. § 64.1200(a)(11).

Finally, the Court turns to Defendant's contention that Plaintiff only opted out of text messages and only received additional texts within the grace periods provided by the TCPA and FTSA. The regulations implementing the TCPA provide that a "do not call" request must be honored "within a reasonable time" not to exceed 10 business days. 47 C.F.R. § 64.1200(d)(3). The FTSA provides that "[a] telephone solicitor or other person may not initiate an outbound

telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission[.]" Fla. Stat. § 501.059(15).[5] The statute does not contain a "grace period" for ceasing calls.

As the Court noted above, there is reason to believe that either (a) the TCPA generally treats revocations over text as applying to calls as well, or (b) Plaintiff's particular text should have been understood as revoking consent to all forms of communication. Thus, Plaintiff sufficiently states a claim under the TCPA, as she alleges receiving calls outside of the 10-day grace period. Similarly, Plaintiff states a claim under the FTSA, as she alleges receiving calls after revoking consent in a manner that could be understood as applying to all communications.

As a result, the Court will not dismiss the Amended Complaint based upon Defendant's arguments regarding the plausibility of the TCPA and FTSA claims.

### C. Contradictions

Defendant's final argument is that the Amended Complaint is "replete with further allegations either (i) contradicted by the evidence provided within the [Amended] Complaint; or (ii) contradicted by other allegations in the [Amended] Complaint." ECF No. [21] at 17. First, Plaintiff alleges that the text messages "advertise[d] . . . discounts and promotions," but the screenshots show that was not the case. *Id*. Second, Plaintiff alleges receiving messages from Defendant over a period of "more than thirteen months" and Defendant ignored an opt-out request for "more than two months," but the screenshots show texts over a period of six days. *Id*. Plaintiff

---

[5] Defendant is correct that the amended FTSA provides telephone solicitors 15 days from receipt of a revocation notice to cease sending text messages. Fla. Stat. § 501.059(10)(c). However, this applies to "action[s] for damages . . . for text message solicitations." *Id*. Plaintiff's post-revocation claims primarily—if not exclusively—address telephone calls. Thus, it does not appear that this "grace period" is applicable.

responds that each alleged "inconsistency" is either a mischaracterization of the allegations, a permissible alternative theory of liability, or a factual dispute that must be resolved in Plaintiff's favor at this stage. ECF No. [25] at 15. Defendant's Reply does not expressly address the alleged contradictions. ECF No. [26].

In assessing a motion to dismiss, "a court is not required to accept factual claims that are internally inconsistent." *Roberts v. Bayview Loan Servicing & M&T Bank*, No. 115CV03356RWSAJB, 2016 WL 7888044, at *10 (N.D. Ga. July 1, 2016), *report and recommendation adopted sub nom. Roberts v. Bayview Loan Servicing*, No. 1:15-CV-3356-RWS, 2016 WL 7974078 (N.D. Ga. Aug. 8, 2016) (citing *Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1343 (S.D. Fla. 1998)). Indeed, factual allegations in a complaint may be "clearly baseless" if they are contradicted by other allegations. *Battle v. Central State Hosp.*, 898 F.2d 126, 130 n. 3 (11th Cir.1990), *aff'd*, 114 F.3d 1200 (11th Cir. 1997). However, the mere presence of inconsistent allegations "does not automatically demand dismissal for failure to state a claim." *See, e.g.*, *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273–74 (11th Cir. 2009). Instead, on a motion to dismiss, what matters is if there is "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted). That is, the Court is to assess whether there are "enough *well-pleaded* facts" to state a claim. *Winstead v. Williams*, 750 F. App'x 849, 850 (11th Cir. 2018) (citations omitted) (emphasis added).

Here, the "contradictions" cited by Defendant are either immaterial to whether the Amended Complaint states a plausible claim for relief or otherwise raise factual matters that cannot be resolved at this stage. For instance, whether the alleged misconduct by Defendant went on for two months, thirteen months, or any other length of time (so long as it is longer than the 10-day grace period contemplated by the TCPA) is irrelevant to the causes of action alleged. Similarly,

even if the text messages did not advertise "discounts and promotions" specifically, they nonetheless plausibly could qualify as "telephone solicitations" or "telephone sales calls" for purposes of stating a TCPA or FTSA claim. 47 U.S.C. § 227(a)(4); Fla. Stat § 501.059(1)(j).

Thus, the Court does not find that any "contradictions" justify dismissal of the Amended Complaint.

### D. Knowing and Willful

In a footnote, Defendant argues that Count IV's claim for "willful/knowing" violations of the TCPA is improper, as this is not an established private right of action and is duplicative of Counts I and II. ECF No. [21] at 12 n.3. Plaintiff responds that dismissal is not warranted; instead, if the Court agrees that treble damages under 47 U.S.C. § 227(c)(5) are a remedy rather than a standalone count, the Court should construe Count IV as seeking enhanced damages under Counts I and II. ECF No. [25] at 15.

The Court agrees with Defendant that "the possibility of treble damages . . . is not a separate cause of action; it is simply an enhancement of the damages available for a violation" of the TCPA. *Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*, No. 619CV196ORL31DCI, 2019 WL 2567971, at *3 (M.D. Fla. June 21, 2019); *Culbertson v. Pro Custom Solar LLC*, No. 8:22-CV-2252-CEH-UAM, 2024 WL 3771606, at *4 (M.D. Fla. Aug. 13, 2024) ("any request for treble damages is more appropriately included in the preceding claim seeking statutory damages").

Because treble damages is not a standalone cause of action and because Plaintiff's other TCPA claims already seek treble damages for knowing and/or willful violations, ECF No. [11] ¶¶ 95, 106, the Court finds dismissal of Count IV is warranted.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [21]**, is **GRANTED IN PART AND**

**DENIED IN PART.**

2. **Count IV** of the Amended Complaint, ECF No. [11], is **DISMISSED**.

3. Defendants shall file an Answer to the Amended Complaint no later than **August 24, 2026.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 10, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

15